# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA ex rel.<br>GERALD WINFIELD | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Case No. 10-cv-4878 |
| | ) | |
| GERADO ACEVEDO, Warden, Hill | ) | Judge Sharon Johnson Coleman |
| Correctional Center,[1] | ) | |
| | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |

## MEMORANDUM OPINION AND ORDER

Petitioner Gerald Winfield filed a petition for writ of habeas corpus challenging the legality of

his incarceration at Hill Correctional Center. Winfield maintains he received ineffective assistance of

appellate counsel because his counsel failed to challenge his conviction on grounds which had a

reasonable probability of success. For the reasons stated below, the Court grants the petition.

## Background

*Trial Proceedings*

Winfield was charged with the murder of Dominick Stovall and the attempted murder of Jarlon

Garrett. Following a bench trial held on May 23rd, June 6th, June 7th, and July 5th of 2000, Winfield

was acquitted of the murder charge and convicted of attempted murder. Dkt. 16-11 at 184. On

August 18, 2000, he was sentenced to a term of thirty years in the Illinois Department of

Corrections. *Id.* at 228.

At trial, the State called three witnesses who testified they were present when Stovall and Garrett

were shot. The first witness was Lonnie Hartman. Hartman testified he was sitting in his car when a

---

[1] Petitioner's present custodian, Stephanie Dorethy, Warden, Hill Correctional Center, is substituted as Respondent. Fed.
R. Civ. P. 25(d); *Rumsfeld v. Padilla,* 542 U.S. 426, 435 (2004).

black car pulled up about thirty feet away from him, someone stepped out of the car, and that individual started shooting at Stovall and Garrett. Dkt. 23 at 18-21. Hartman testified that the shooter was walking towards Stovall and Garrett as he fired, and then turned around, got back into the car, and the car took off. *Id.* at 23-25. He described the shooter as a black male that was at least six feet tall. *Id.* at 26, 36. Hartman could not identify Winfield as the shooter. *Id* at 22. According to Hartman, the shooter did not have anything on his head and was not wearing a mask. *Id.* at 22, 41.

The second eyewitness was Lorenzo Curry. Curry testified that in August of 1998, he was at a dice game with Winfield, Garrett, Stovall, and Winfield's younger brother Terrance. *Id.* at 44. An argument occurred after Terrance bumped the dice out of Stovall's hand and caused Stovall to lose. *Id.* at 45-46. Curry also testified that on October 17, 1998 he observed the shooting of Stovall and Garrett from the porch of a nearby house. *Id.* at 53-54. Curry testified that two shooters, Winfield and an unidentified individual, jumped out of a black car and began shooting at Stovall and Garrett. *Id.* at 54-55. On cross-examination, evidence was introduced showing that Curry's prior statements to the police and his testimony before the grand jury were inconsistent with his trial testimony as to the number of shooters, his ability to identify the shooters, and whether or not the shooters were wearing masks. *Id.* at 68-75.

The third eyewitness was the victim, Garrett. Garrett testified that a black car pulled up alongside him and Stovall, Winfield got out of the car, pulled a mask over his face, and began shooting at them. *Id.* at 102-103. Garrett also testified about the dice game in August, stating that Terrance bumped Stovall, then Stovall and Winfield got into an argument over whether Stovall could redo his roll. *Id.* at 110-111.

Detective Kaizer then testified about his investigation of the October 17 shooting. Following Curry and Garrett's identification of Winfield as the shooter from a photo array, Kaizer arrested Winfield on December 12, 1998 just before midnight. *Id.* at 152-53. Curry and Garrett both also

identified Winfield as the shooter from separate lineups. *Id.* at 153-54. Following the lineups, at around 10:00 in the evening on December 13, Winfield gave Kaizer an oral statement about the October 17 shooting. *Id.* at 155. Kaizer then contacted Assistant State's Attorney Laura Forester, who came to the police station, interviewed Winfield, and then wrote up a statement that Winfield reviewed and signed at approximately 1:00 in the morning on December 14. *Id.* at 155-159.

Winfield's statement provided the following information. Some months prior, Winfield had been playing dice with Stovall, Garrett, and Terrance. *Id.* at 164. Terrance bumped Stovall and Stovall "crapped out" or lost by rolling a seven. *Id.* Stovall began to shove Terrance while Winfield and Stovall argued. *Id.* A week later "everything got squashed, which means that [Stovall and Winfield] were getting along." *Id.* Later, Winfield began to have problems with Garrett because Terrance was beaten up by members of Garrett's gang. *Id.* at 165. Winfield began carrying a gun in his waistband after Garret shot at him. *Id.* On October 17, a black car pulled up to Winfield and Winfield got in. *Id.* The car then pulled up to a corner where Winfield saw Stovall and Garrett, so Winfield got out of the car and began shooting at Garrett. *Id.* Another passenger from the car also got out of the car and began shooting. *Id.* Winfield tried to get back into the car, but it pulled away without him, so he ran north, hid his gun under a bush, and a few days later gave the gun to a friend. *Id.*

On cross-examination of Kaizer, evidence was introduced that Kaizer and his partner Sergeant Chasen had interviewed Garrett when he was in the hospital. *Id.* at 191. At that time Garrett did not identify Winfield as the shooter but provided other details about the incident. *Id.* at 192.

The forensic evidence in the case was limited. Fifteen 9 millimeter cartridges were recovered from the scene of the crime but the evidence was inconclusive as to whether they were all fired from the same weapon. Dkt. 16-11 at 4. One 9 millimeter bullet was recovered from Stovall's body. *Id.* at 5-6.

Winfield testified in his own defense. He denied being involved in the shooting. *Id.* at 43. He testified that Kaizer questioned him periodically throughout the night and that he did not sleep the night of December 12th. *Id.* at 47. During his interrogation he continually told Kaizer he did not know anything about the October 17th shooting and Kaizer continued to ask him to cooperate. *Id.* at 48. Winfield testified that at one point Kaizer kicked him in the stomach. *Id.* at 48-49. Winfield further testified that Kaizer told him that if he signed some papers he would be let go. *Id.* at 49-50. Winfield signed the statement prepared by Forester, which Winfield contends he did not read before he signed. *Id.* at 56-63. Winfield conceded that he and Stovall "had a few words" after the dice game where Terrance bumped Stovall, but denied having any problems with Garrett. *Id.* at 65-66. Winfield also testified that he is five feet seven inches tall. *Id.* at 89.

At the end of the trial, the judge found that Hartman was "[t]he only real credible witness in this case." *Id.* at 174. He stated that Curry's credibility was "worthless" due to "extensive impeachment" and that Garrett's credibility was "not much better" because he had failed to identify Winfield at "the earliest opportunity." *Id.* at 175-77. The trial judge found he was "unable to determine whether or not there were two shooters" and that there was no evidence that connected Winfield to the murder of Stovall. *Id.* at 178. He went on to state that although "no credible witness has placed this defendant at the scene of this occurrence" he was assured of Winfield's presence because of Winfield's written statement admitting he was there. *Id.* at 179. He found Winfield's testimony that he only signed the statement because he wanted to go home was not credible because Winfield was "an intelligent, articulate, thoughtful young man." *Id.* at 180. The judge then went on to evaluate the evidence that corroborated Winfield's statement. He found that the evidence that Garrett had been shot twice satisfied the elements of attempted murder because "[s]hooting a person with a gun is conduct which is a substantial step towards committing the offense of murder" and "firing a gun at a person in close up proximity . . . is conduct from whence one can infer an intent to kill." *Id.* at 182-

183. The judge found that the intent to kill was bolstered by Winfield's admission in his written statement "that because of some misunderstanding that he had with [Garrett] sometime earlier … he was carrying a gun." *Id.* at 183. The judge then found Winfield not guilty of the murder of Stovall but guilty of the attempted murder of Garrett. *Id.* at 184.

*Procedural History After Trial*

New counsel represented Winfield on direct appeal and raised the single issue that the sentence was an abuse of discretion because the trial judge did not give consideration to Winfield's potential for rehabilitation. Dkt. 16-2 at 3. The appellate court rejected the argument and affirmed the sentence, Dkt. 16-1, and the Illinois Supreme Court denied a petition for leave to appeal, Dkt. 16-7. Winfield then filed a petition for post-conviction relief. He raised, among others, the arguments he presses here, that his appellate counsel was ineffective for failing to argue that the evidence was insufficient to convict him and failing to argue the evidence did not satisfy the corpus delicti rule. Dkt. 16-12 at 20-25. The trial court evaluating his post-conviction claim described the issues raised by Winfield as "(1) his trial attorney was ineffective for failing to call two alibi witnesses and (2) his appellate counsel was ineffective for failing to raise the issue of his trial attorney's incompetence on appeal." Dkt. 16-13 at 1. Addressing the merits of only those two arguments, the trial court denied relief, *id.* at 7, and the appellate court affirmed, Dkt. 16-16. The Illinois Supreme Court denied a petition for leave to appeal. Dkt. 16-18.

After Winfield filed his petition in this action, this Court permitted Winfield to take limited discovery on the question of his appellate counsel's process for choosing the issues he raised on appeal. Appellate counsel's research file was produced and appellate counsel was deposed. Dkt. 35 and 36. At the deposition he testified that he did not have any independent recollection of his thought process while working on the appeal, but offered opinions as to what he was likely thinking at the time based on how he presently viewed Winfield's case. Dkt. 36 at 4,7,10.

**Legal Standard**

A court may grant habeas relief to a petitioner who "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241. When "no state court has squarely addressed the merits" of an issue raised in the habeas petition, the claim is reviewed under the pre-AEDPA standard, which instructs the court to dispose of the matter "as law and justice require." *Toliver v. Pollard*, 688 F.3d 853, 859 (7th Cir. 2012); 28 U.S.C. § 2243.

**Discussion**

Winfield argues that he received ineffective assistance of appellate counsel because his appellate counsel did not argue that there was insufficient evidence to convict him of attempted murder. In particular, Winfield claims he had a viable challenge to the sufficiency of the evidence pursuant to Illinois' corpus delicti rule.

The Supreme Court has determined that the standard for evaluating the effectiveness of trial counsel, which it set out in *Strickland v. Washington,* 466 U.S. 668 (1984), also applies to appellate counsel. *Smith v. Robbins*, 528 U.S. 259, 285 (2000). Under the *Strickland* standard a petitioner must show (1) his counsel's performance "fell below an objective standard of reasonableness," 466 U.S. at 688, and (2) there is a "reasonable probability" that but for the substandard performance "the result of the proceeding would have been different," 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* Courts may examine the prejudice prong first and then proceed to the performance prong, since a finding of no prejudice would be dispositive. *Id.* at 697. Here, the focus of the inquiry regarding appellate counsel's performance is the choice of issues presented in the appeal. In such cases, a counsel's performance is insufficient when "counsel omits a significant and obvious issue without a legitimate strategic reason for doing so." *Howard v. Gramley*, 225 F.3d 784, 790 (7th Cir. 2000) (internal quotations

omitted). Courts find prejudice "when that omitted issue may have resulted in a reversal of the conviction, or an order for a new trial." *Id.*

This prejudice prong requires the court to view the evidence in the light most favorable to the prosecution and determine whether any rational trier of fact could have found the case against the defendant had been proven beyond a reasonable doubt. *People v. Patterson*, 314 Ill.App.3d 962, 968-69 (2000). This standard of review is applicable with equal force to both jury and bench trials. *Id.* at 969. It is the province of the trier of fact to weigh the evidence and make credibility determinations, but "it is the duty of a reviewing court to reverse where the record reveals a reasonable doubt." *People v. Foster*, 138 Ill.App.3d 44, 47(1985). A reviewing court "will reverse a conviction where the evidence is so unreasonable, improbable, or unsatisfactory as to justify a reasonable doubt of defendant's guilt." *People v. Smith*, 185 Ill.2d 532, 542 (1999). The evidence in this case that supported the conviction consisted of (1) the physical evidence that shots were fired at Stovall and Garrett and (2) Winfield's written confession that he was the shooter. In light of the corpus delicti rule, which requires that extrajudicial confessions be adequately corroborated, the evidence is slim enough to create a reasonable probability that an Illinois appellate court would have found it unsatisfactory.

Illinois law requires courts to proceed with caution when convicting a defendant based on his or her extrajudicial confession because "for various psychological reasons persons 'confess' to crimes that either have never occurred or for which they are not legally responsible." *People v. Dalton*, 91 Ill.2d 22, 29 (1982). Innocent people may confess to a crime they did not commit due to "fatigue, stress … being worn down through relentless questioning and sleep deprivation … fear; … the expectation of future exoneration; [or] … due to coercive or suggestive methods of interrogation." *People v. Rivera*, 356 Ill.Dec. 709, 721 (Ill. App. 2011).

Because Illinois courts recognize that extrajudicial confessions are potentially untrustworthy, a conviction based on such a confession must be corroborated by independent evidence in order to be

sustained. *People v. Smith*, 172 Ill.App.3d 94, 109 (1988). The independent evidence need not be sufficient by itself to prove the offense, but it must (1) tend to prove that an offense occurred and (2) corroborate the facts contained in the confession. *People v. Collins*, 184 Ill.App.3d 321, 333-34 (1989). This requirement is known as the corpus delicti rule because historically, corroboration was only required for the limited purpose of ensuring that a defendant was not convicted of a crime that had never even occurred, i.e., for which there was no corpus delicti[2]. *See Spivey v. Sternes,* 20 F. App'x 514, 516 (7th Cir. 2001) (explaining the evolution of the parallel federal rule). However in modern times, corroborating evidence is required both to establish that a crime occurred and to confirm "the essential trustworthiness" of the confession. *Collins*, 184 Ill.App.3d at 333. "[T]he corroborating evidence [must] correspond with the circumstances recited in the confession and tend to connect the defendant with the crime." *Lara*, 368 Ill.Dec. at 168.

At his criminal trial, Winfield was found guilty of attempted murder based almost entirely on his confession. There was no physical or forensic evidence which connected Winfield to the offense. Additionally, the trial judge found that no credible witness could place Winfield at the scene of the crime and explicitly stated that his finding that Winfield was there was based on Winfield's written statement to the police. The testimony of the only eyewitness the judge found credible, Hartman, did not tend to connect Winfield with the crime or inspire belief in the essential trustworthiness of Winfield's statement. To the contrary, Hartman did not identify Winfield as the shooter and instead described the shooter as being significantly taller than Winfield. Hartman also contradicted Winfield's written statement by testifying there was only one shooter, not two, and that the shooter left the scene of the crime in the car, not on foot.

The trial judge, acknowledging the corpus delicti rule, relied on the evidence that Garrett was shot twice to corroborate Winfield's statement. The trial judge found this evidence tended to prove

---

[2] The corpus delicti is the commission of an offense, a distinct concept from the identity of the person who committed the crime. *People v. Lara,* 368 Ill.Dec. 155, 160, 983 NE 2d 959, 964(Ill. 2012).

that the offense of attempted murder occurred, and there is support for such a conclusion in Illinois law. *See, e.g., People v. Lenius*, 293 Ill.App.3d 519, 539 (1997) (recognizing that intent to kill can be shown by evidence of the "character of the assault and the use of a deadly weapon").

But the judge did not point to any credible evidence that satisfied the second prong of the corpus delicti rule, specifically, independent evidence that corresponded with the facts provided in the confession and tended to connect Winfield to the crime. Aside from the evidence that *someone* shot Garrett, the only other evidence the trial judge relied on to convict Winfield was the evidence that Winfield was carrying a gun because Garrett had shot at him earlier. However, this evidence exists only in Winfield's broadly written statement. Facts taken from the extrajudicial confession itself cannot be used as corroborating evidence to satisfy the corpus delicti rule. *See Vill. of Mundelein v. Sanchez-Robles,* No. 2-10-1324, 2012 WL 6967071 at *5 (Ill. App. Aug. 14, 2012) (trial court should not have relied on the fact that the defendant owned the vehicle to corroborate her confession to driving under the influence because "the only evidence that defendant owned the vehicle was her statement to police that she was the owner of the vehicle" and "the corroborating evidence must be independent of the confession").

Respondent argues that Winfield's in-court testimony sufficiently corroborates his statement because Winfield admits there was a dice game during which his younger brother upset Stovall and Winfield and Stovall argued as a result. Dkt. 43 at 12. But Winfield's in-court testimony that he "had a few words" with Stovall after a dice game does nothing to corroborate the facts in the statement that Winfield and Garrett were engaged in an ongoing conflict of such intensity that Winfield elected to arm himself. Nor does it in any way corroborate the facts in the statement describing the shooting itself. Evidence that only corroborates tangential components of a confession is insufficient to satisfy the corpus delicti rule. *See, e.g., People v. Lambert*, 104 Ill.2d 375, 379-381 (1984) (evidence that defendant and alleged victim both slept in the basement of the house did not sufficiently

corroborate defendant's confession to sexually abusing the victim); *People v. Jackson*, No. 1-13-2882, 2015 WL 9272813 at *6 (Ill. App. Dec. 17, 2015) (in an unlawful use of a weapon by a felon case, recovery of a firearm at a residence where the defendant was present did not sufficiently corroborate the defendant's confession that firearm was his, absent some independent evidence that defendant exercised control over the firearm).

It is not this Court's place to rule on the merits of Winfield's argument that the evidence was insufficient to convict him in light of the corpus delicti rule. But an examination of Illinois law reveals that the argument has enough merit to establish a reasonable probability that an Illinois appellate court considering it might have ruled in Winfield's favor. The Court is mindful that "great deference should be given to trial judges when they hear the evidence and observe the witnesses." *People v. Hernandez*, 312 Ill.App.3d 1032, 1037 (2000). Nonetheless, appellate courts "are not reluctant to examine the [bench trial] record for a lack of evidence linking the defendant to the crime charged." *Id.*[3] Although it is difficult to prevail on a challenge to the sufficiency of the evidence, Illinois appellate courts have not shied away from reversing convictions pursuant to the corpus delicti rule, even where the verdicts were entered in bench trials. *See e.g., Jackson*, 2015 WL 9272813; *People v. Harris*, 333 Ill.App.3d 741, 749-51 (2002) (reversing conviction, despite presumption that trial judge will only consider competent evidence, because the testimony the trial judge relied on to corroborate defendant's confession lacked proper foundation); *Foster*, 138 Ill.App.3d at 47 (reversing conviction for driving under the influence because location of car off the highway and partially over a ditch did nothing to corroborate defendant's confession that he, not the other car occupant, was the driver).

Turning to the performance prong, the Court must consider whether Winfield's appellate counsel declined to challenge the sufficiency of the evidence under the corpus delicti rule for a

---

[3] Additionally, the trial judge's own statements on the record show he struggled with the strength of the evidence.

legitimate strategic reason. When evaluating whether counsel omitted a "significant and obvious issue without a legitimate strategic reason," the strength of the issue raised relative to the omitted issue is relevant to the inquiry. *Howard*, 225 F.3d at 791. But where the appeal only raised one issue, the court may consider the fact that adding a small amount of additional issues would not have cluttered the appellate brief. *U.S. ex rel. Howard v. DeTella*, 959 F. Supp. 859, 865 (N.D. Ill. 1997) (Castillo, J.), *aff'd sub nom. Howard v. Gramley*, 225 F.3d at 791 (approving of the district court's analysis of the performance prong).

Winfield's appellate brief raised only the argument that the judge abused his discretion by failing to consider during sentencing Winfield's potential for rehabilitation, as is required by the Illinois constitution. That argument was weak because of both the difficult standard of review and the trial judge's explicit statement that he had considered Winfield's potential for rehabilitation and found it was somewhere between "nil and zero." Dkt. 16-11 at 227. Respondent maintains that it is enough that appellate counsel considered the omitted issue and rejected it. But the evidence does not show that appellate counsel considered and rejected the corpus delicti argument, much less that he did so for a *legitimate* strategic purpose. None of the cases in counsel's research file addressed the corpus delicti rule or what evidence is sufficient to corroborate a defendant's confession. Appellate counsel's deposition testimony does not help Respondent on this point because appellate counsel testified that he does not remember his thought process or strategy from his time working on the appeal. In light of the merit of the omitted argument, the weakness of the raised argument, the single-issue appeal, and the lack of evidence that the omitted argument was considered and rejected for a legitimate strategic reason, appellate counsel's performance was deficient for failing to raise the corpus delicti issue. *See United States v. Glover*, 149 F. Supp. 2d 371, 382 (N.D. Ill. 2001) (Hart, J.)(finding appellate counsel's performance deficient because raised arguments were weak, it would

not have been excessive to add an additional issue to a two-issue appellate brief, and there was no evidence the argument at issue was omitted for a strategic reason).

Winfield urges that this Court's should authorize a new trial in the event that there is no procedural mechanism for re-opening his long-closed direct appeal. While the Seventh Circuit ordered such a remedy in *Mason v. Hanks*, 97 F.3d 887, 902 (7th Cir. 1996), it provided no explanation as to why. Winfield's argument that ordering only a new appeal is an insufficient remedy lacks legal support. If enforcement of this Court's order for a new appeal proves procedurally impossible, Winfield may move to reinstate his habeas petition for modification of the order, at which time the Court will consider if a new trial is the appropriate remedy.

**Conclusion**

For the foregoing reasons, Winfield's habeas petition is granted. The Court orders the State of Illinois to reopen Winfield's direct appeal within 120 days of this order.

IT IS SO ORDERED.

_____
SHARON JOHNSON COLEMAN
United States District Judge

DATED: March 30, 2016